**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1537**

JAMES W. MCGLOTHLIN,

Plaintiff - Appellant,

v.

KEVIN N. HENNELLY,

Defendant - Appellee

----------------------------------------------

FIRST AMENDMENT SCHOLARS; REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 15 MEDIA ORGANIZATIONS,

Amici Supporting Appellee.

Appeal from the United States District Court for the District of South Carolina, at Beaufort. David C. Norton, District Judge. (9:18-cv-00246-DCN)

Submitted: June 17, 2021                                    Decided: July 13, 2021

Before WILKINSON, FLOYD, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

R. Andrew Hutchinson, Brent B. Young, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Johnson City, Tennessee, for Appellant. Robert H.

Jordan, Robert C. Osborne III, PARKER POE ADAMS & BERNSTEIN LLP, Charleston, South Carolina; Nicole Jean Ligon, Sarah Ludington, First Amendment Clinic, DUKE UNIVERSITY LAW SCHOOL, Durham, North Carolina, for Appellee. Kathleen E. Farley, Robert D. Balin, DAVIS WRIGHT TREMAINE LLP, New York, New York; Bruce D. Brown, Katie Townsend, Caitlin Vogus, Lin Weeks, REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, Washington, D.C., for Amici Curiae.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2016, the owner of Hilton Head National Golf Course, Scratch Golf, LLC ("Scratch Golf"), roiled residents of Beaufort County, South Carolina, by filing a rezoning application aimed at converting the golf course into a sprawling residential and commercial development. The application eventually fell through, but not before one Beaufort resident, Kevin N. Hennelly, made his displeasure known. After reading a local newspaper's coverage of the controversy, Hennelly took to the article's online comment section to voice his concerns about some of the people involved in the move to repurpose the property. Among his targets was James W. McGlothlin, the owner of United Company, which in turn owned Scratch Golf. According to Hennelly, McGlothlin paid Maureen McDonnell— wife of then-Governor of Virginia Robert McDonnell—$36,000 for a "'no show' job." (J.A.[1] 31). And in remarks posted on Facebook on the day after the rezoning application was denied, Hennelly criticized the local newspaper for "refus[ing] to print the documented corruption of the owners of United Company." (J.A. 36). He went on to allege that "James McGlothlin w[as] up to [his] eyeballs in the recent scandals in Virginia with the Governor and his wife. McGlothlin gave the Governor[']s wife a no show job . . . ." (J.A. 36).

McGlothlin thereafter commenced the instant defamation suit against Hennelly. Though McGlothlin complained of several allegedly defamatory statements, the district court granted Hennelly's motion to dismiss as to all but two remarks: the allegation of "documented corruption" and the assertion that Maureen McDonnell received a "'no show'

_____

[1] Citations to "J.A." refer to the joint appendix filed in this appeal.

3

job." Following discovery, the district court granted summary judgment to Hennelly, finding that McGlothlin failed to establish that Hennelly acted with common law malice. For the reasons that follow, we affirm.

"We review de novo a district court's grant or denial of a motion for summary judgment, construing all facts and reasonable inferences therefrom in favor of the nonmoving party." *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In South Carolina, a plaintiff alleging defamation "must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 664 (S.C. 2006). Where a private plaintiff is involved, a defamatory statement is actionable only if the defendant acted with common law malice, *id.*, which "means the defendant acted with ill will toward the plaintiff, or acted recklessly or wantonly, *i.e.,* with conscious indifference of the plaintiff's rights," *id.* at 665.

Generally, if the contested statement "tend[s] to degrade . . . , to disgrace . . . , or to render [the plaintiff] odious, contemptible, or ridiculous," then the statement is actionable per se, and common law malice is presumed to exist. *Id.* at 664 (internal quotation marks omitted). However, "[i]t is well established that tort liability under state law, even in the context of litigation between private parties, is circumscribed by the First Amendment."

4

*Snyder v. Phelps*, 580 F.3d 206, 217 (4th Cir. 2009); *see Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 503 (S.C. 1998) ("At common law, defamation was a 'strict liability' tort, but where the constitution is involved, the common law rules are altered."). "Thus, regardless of the specific tort being employed, the First Amendment applies when a plaintiff seeks damages for reputational, mental, or emotional injury allegedly resulting from the defendant's speech." *Snyder*, 580 F.3d at 218.

In light of this constitutional gloss, the Supreme Court of South Carolina has recognized that, in some situations, common law presumptions must give way to First Amendment protections. *Erickson*, 629 S.E.2d at 665. For example, "in a case involving an issue of public controversy or concern where the libelous statement is published *by a media defendant*," a private plaintiff must prove common law malice. *Id.* (emphasis added). Though *Erickson* drew a distinction between media and nonmedia defendants, *id.*, we have since held that "the status of [a defendant] as media or nonmedia is immaterial," *Snyder*, 580 F.3d at 219 n.13.[2]

---

[2] In the proceedings below, Hennelly argued—and the district court agreed—that *Snyder* and *Erickson* combined to eliminate the common law presumption of common law malice where, as here, a private defamation plaintiff sues a nonmedia defendant for statements involving a matter of public concern. For the first time on appeal, McGlothlin attempts to distinguish *Snyder* in an effort to reinstate the common law presumption. Because McGlothlin neglected to present these arguments to the district court, we decline to consider them now. *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) ("[A]bsent exceptional circumstances, we do not consider issues raised for the first time on appeal." (ellipsis and internal quotation marks omitted)). Thus, for purposes of this appeal, we assume that the district court correctly determined that the presumption of common law malice did not apply.

At his deposition, Hennelly explained that he actively researched the people involved in the rezoning application, including McGlothlin. His research led him to a *Washington Post* article reporting that United Company paid Maureen McDonnell "$36,000 . . . to attend a handful of meetings as a consultant." (J.A. 37). Critically, the article insinuated that Governor McDonnell purposefully misidentified the position as a paid trusteeship so that he would not have to disclose his wife's salary. To Hennelly, this was an ethical violation, in which McGlothlin played a critical role.

On appeal, McGlothlin claims that Hennelly doubted—or had reason to doubt—the veracity of the offending statements. In support, he cites Hennelly's concession that, to his knowledge, McGlothlin had never committed or been convicted of a crime. Thus, according to McGlothlin, Hennelly knew his statements were unfounded, yet he decided to publish them anyway, thereby demonstrating a conscious indifference to McGlothlin's rights.

We cannot agree. Neither statement at issue accused McGlothlin of criminal activity, so the fact that Hennelly found no evidence that McGlothlin committed a crime is irrelevant.[3] And regarding the allegations of "documented corruption" and a "'no show' job," Hennelly's testimony reflected his earnest belief that McGlothlin was involved in Governor McDonnell's ethical violation relating to his wife's position with Union

---

[3] Hennelly also claimed that Maureen McDonnell's position with Union Company was "at the heart of the [un]ethical and criminal activity." (J.A. 36). However, the reference to "[un]ethical and criminal activity" did not survive Hennelly's motion to dismiss, and McGlothlin does not challenge this ruling on appeal.

Company.  Though McGlothlin might dispute that he engaged in any impropriety, we discern no evidence that Hennelly harbored serious doubts about the accuracy of his statements.  Consequently, McGlothlin cannot show that, in publishing his comments, Hennelly acted with common law malice.

Accordingly, we affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*